# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
## CASE NO. 1:16-CV-00243-RLV

| | |
|---|---|
| STEWART WAYNE OWENBY, ) ) Plaintiff, ) ) v. ) ) NANCY A. BERRYHILL, Acting ) Commissioner of Social Security, ) ) Defendant. ) _____ ) | **ORDER** |

**THIS MATTER IS BEFORE THE COURT** on cross-motions for summary judgment. (Docs. 14, 18). Plaintiff has filed a Response to Defendant's Motion for Summary Judgment. (Doc. 20), as well as an Amended Memorandum in support of his motion for summary judgment (Doc. 26). Defendant has filed a notice in response to Plaintiff's Amended Memorandum indicating that Defendant stands by her Memorandum in support of her Motion for Summary Judgement and will not be submitting an amended memorandum. (Doc. 27). Accordingly, the cross-motions for summary judgment are ripe for disposition. For the reasons that follow, Plaintiff's Motion for Summary Judgment (Doc. 14) is **DENIED**, Defendant's Motion for Summary Judgment (Doc. 18) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I. BACKGROUND

In 2012, Plaintiff Stewart Wayne Owenby filed an application for disability insurance benefits under Title II of the Social Security Act, alleging an inability to work due to a disabling condition commencing on August 28, 2010. (Tr. 35, 186-89). The Commissioner of Social Security ("Commissioner" or "Defendant") initially denied Plaintiff's applications on May 1, 2012

1

and, upon reconsideration, again denied the application on January 18, 2013. (Tr. 35, 131-34, 138-45). Plaintiff requested a hearing and, on August 11, 2014, appeared by video conference before Administrative Law Judge Alice Jordan ("ALJ Jordan").[1] (Tr. 35, 54-106, 146-47). At the hearing, Plaintiff was represented by an attorney. (Tr. 56).

Through a written decision, ALJ Jordan concluded that Plaintiff was not disabled. (Tr. 35-46). At Step One, ALJ Jordan found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (Tr. 37). At Step Two, ALJ Jordan concluded that Plaintiff's right ankle and foot disorder with plantar fasciitis, right shoulder disorder, history of pulmonary embolism, and obesity all qualified as severe impairments. (Tr. 37). ALJ Jordan, however, concluded that Plaintiff's leg spasms, shortness of breath, right foot edema, hypertension, hiatal hernia, asthma and allergies, and adjustment disorder with symptoms of anxiety and depression did not qualify as severe impairments. (Tr. 38-40).

Specific to Plaintiff's adjustment disorder with symptoms of anxiety and depression, ALJ Jordan noted that Plaintiff's primary providers prescribed him medication for depression. (Tr. 39). ALJ Jordan further noted that Plaintiff reported an improved mental state once on medication, Plaintiff never underwent any formal mental health treatment, Plaintiff's mental status exams were "essentially benign," and Plaintiff was able to handle his own affairs, communicate with others and act in his own interest. *Id.* (citing Tr. 443-554, 674-780). Based on this review of the record, ALJ Jordan stated the temporary conclusion that Plaintiff's "alleged mental impairment does not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and is therefore nonsevere." *Id.* ALJ Jordan also evaluated Plaintiff's alleged mental impairment

---

[1] ALJ Jordan conducted the hearing via video conference because she is based in Greenville, South Carolina. (Tr. 56). Plaintiff, then a resident of Hendersonville, North Carolina, testified from Asheville, North Carolina. (*See* Tr. 32, 54, 56-57).

using the Psychiatric Review Technique. (Tr. 39-40); *see also* 20 C.F.R. § 404.1520a. As to daily living, ALJ Jordan, relying on Plaintiff's ability to care for himself, read, help his daughter with homework, prepare his own meals, do laundry, drive, shop, use a computer, and make his bed, found Plaintiff experienced only mild limitations. (Tr. 39). As to social functioning, ALJ Jordan found that Plaintiff experienced no limitations, as evident by his frequent visits to his uncle's pawn shop to socialize with friends and by the lack of any self-reports of issues getting along with others. *Id.* (citing Tr. 241-48, 259-65). Turning to concentration, pace, and persistence, ALJ Jordan, relying on Plaintiff's reports that he did not experience issues with attention and could finish projects, follow instructions, and handle stress, found that Plaintiff experienced no limitations. (Tr. 40 (citing Tr. 241-48, 259-65)). Finally, ALJ Jordan found that Plaintiff did not experience any episodes of decompensation. *Id.* Based on the lack of any marked limitations and no episodes of decompensation, ALJ Jordan concluded that the psychiatric review technique also established that Plaintiff's alleged mental impairment was nonsevere.[2] *Id.*

At Step Three, ALJ Jordan concluded that Plaintiff did not meet any of the Listings in 20 CFR Part 404, specifically noting that she considered Listings in Sections 1.00 and 4.00. *Id.* ALJ Jordan proceeded to form Plaintiff's residual functional capacity, first summarizing Plaintiff's hearing testimony and then discussing Plaintiff's medical records. (Tr. 40-45). ALJ Jordan found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely credible" in light of the medical record, including Plaintiff's self-reports and the evaluation notes of his treating physicians.

Specific to Plaintiff's right ankle and foot disorder, ALJ Jordan noted that Plaintiff sustained an injury in 2009 and originally received conservative treatment. (Tr. 42). Although

---

[2] In reaching this conclusion, ALJ Jordan noted that her determination was the same as the determination by the state agency physician. (Tr. 40).

3

conservative treatment result in Plaintiff regaining "excellent" range of motion and being released to do normal activities, Plaintiff experienced continued instability in early 2010 and a second medical opinion resulted in the diagnosis of a "nonunion of an anterior calcaneus process fracture." *Id.* Plaintiff underwent a series of surgeries, a lidocaine injection, and a platelet rich plasma injection between May 2010 and November 2011. *Id.* In July 2011, Plaintiff reported that his ankle was doing better but that his plantar fascia pain remained. *Id.* In January 2012, a functional evaluation concluded that Plaintiff could perform medium physical work with restrictions for no climbing ladders, infrequent crouching, infrequent to occasional walking, occasional dynamic standing, and an option to alternate between sitting and standing. *Id.* In February 2012, Plaintiff declined surgery to address his plantar fasciitis condition and his treating physician determined that he had reached maximum medical improvement, did not suffer from any gross instability, and that the alignment of his ankle and foot were "satisfactory," but that he continued to experience "mild" swelling and "moderate" tenderness in his right ankle and foot. *Id.* Subsequent to October 2012, Plaintiff did not visit a specialist for his right ankle and foot disorder, only pursuing pain management treatment. *Id.* Based on her review of the medical records, ALJ Jordan concluded that (1) no evidence showed a need for Plaintiff to use an assistive device, (2) Plaintiff only experienced mild side effects from the pain medication he was taking and that the side effects would not interfere with his ability to work, (3) Plaintiff could stand and move about in a satisfactory manner, and (4) Plaintiff was not credible with respect to the extent of his limitations from his right ankle and foot disorder. (Tr. 42-43).

Specific to Plaintiff's right shoulder disorder, ALJ Jordan noted that Plaintiff underwent surgery in 2007 and reached maximum medical improvement thereafter. (Tr. 43). In 2008, Plaintiff's treating physician assigned him a permanent partial impairment rating of ten percent

4

with a limitation for no climbing ladders crawling, or lifting more than thirty pounds. *Id.* However, the same physician noted that a physical exam of Plaintiff's right shoulder was "unimpressive" and that Plaintiff had "full range of motion and no crepitence." *Id.* Five years later, in 2013 and 2014, Plaintiff made occasional complaints of right shoulder pain but did not undergo any treatment for his right shoulder. *Id.* Based on her review of the medical record, ALJ Jordan concluded that Plaintiff was not credible with respect to the extent of the limitations caused by his right shoulder disorder and that his right shoulder disorder did not cause a disabling limitation.[3]

Based on her review of the medical records, Plaintiff's hearing testimony, and the physician opinions, ALJ Jordan established the following residual functional capacity for Plaintiff: light work defined to include the capacity to lift ten to twenty pounds, sit up to six to eight hours a day and stand or walk up to six of eight hours a day with restrictions for (1) a sit/stand option every one to one and a half hours; (2) only occasional pushing and pulling with right lower extremity; (3) only occasional overhead reaching with right upper extremity; (4) only occasional climbing, crouching, crawling, and kneeling; (5) never use ladders, ropes, or scaffolds; (6) only frequent balancing and stooping; and (7) avoid exposure to cold, wetness, and hazards. (Tr. 40). At Step Four, and relying on a vocational expert to determine Plaintiff's past relevant work, ALJ Jordan concluded that Plaintiff could not perform his past relevant work as a HVAC service technician or as a material handler because both occupations were rated as heavy work. (Tr. 45; *see also* Tr. 101). At Step Five, relying on the vocation expert, ALJ Jordan concluded that Plaintiff's residual

---

[3] ALJ Jordan separately discussed Plaintiff's history of pulmonary embolism and obesity, concluding that Plaintiff's history of pulmonary embolism was controlled by treatment such that he did not experience any ongoing disabling conditions and that his obesity needed to be accounted for in forming Plaintiff's residual functional capacity because it likely "adversely impacted" limitations primarily attributable to other severe impairments. (Tr. 43-44). Finally, ALJ Jordan discussed how her review of the medical records and her consideration of Plaintiff's hearing testimony impacted the weight she gave to the opinions of the state agency physician and Plaintiff's treating physicians.

5

functional capacity permitted him to perform the duties of a packager, DICOT § 753.687-038, Inspector, DICOT 741.687-010, and Sorter, DICOT § 789.687-146. (Tr. 45-46; *see also* Tr. 103). Accordingly, ALJ Jordan concluded that Plaintiff "has not been under a disability . . . from August 28, 2010, through the date of [her] decision," namely October 31, 2014. (Tr. 46).

Plaintiff requested that the Appeals Council review ALJ Jordan's adverse decision. (Tr. 29). As part of his request for review, Plaintiff provided the Appeals Council with a psychological assessment performed by Deborah Barnett, Ph. D. on January 22, 2015. (Tr. 6-22). The Appeals Council denied Plaintiff's request for review, in part noting that the psychological assessment completed by Barnett pertained to a period of time subsequent to the date of ALJ Jordan's decision.[4] (Tr. 1-2). Plaintiff instituted this action seeking judicial review of the denial of benefits. On January 12, 2017, Plaintiff initially filed a motion to accept pleadings and a motion for summary judgment and supporting memorandum. (Docs. 13-15). After this Court denied Plaintiff's motion to accept pleadings because the supporting memorandum did not comply with the requirements of this Court's Social Security Briefing Order (Case No. 3:13-mc-198-FDW; Doc. 1), (Doc. 22), Plaintiff filed an amended supporting memorandum (Doc. 26). The Commissioner has indicated her intent to stand on her motion for summary judgment and supporting memorandum rather than file any response to Plaintiff's amended supporting memorandum. (Doc. 27). In his amended supporting memorandum, Plaintiff raises two assignments of error: (1) ALJ Jordan erred in assessing Plaintiff's non-exertional limitations resulting from his adjustment disorder with symptoms of depression and anxiety and (2) ALJ Jordan failed to perform a function-by-function analysis in her decision and did not account for all

---

[4] The denial of review from the Appeals Council advised Plaintiff that if he wanted the Social Security Administration to consider whether he was disabled subsequent to ALJ Jordan's October 31, 2014 decision, he needed to file a new claim. (Tr. 2).

6

of Plaintiff's functional limitations. (Doc. 26 at 9-18; *see also* Doc. 20 at 1-4). Specific to his first argument, Plaintiff contends that his adjustment disorder with symptoms of depression and anxiety constituted a severe impairment for purposes of Step Two of the sequential analysis and that Barnett's psychological assessment provides the necessary evidence in support of this conclusion. (Doc. 26 at 9-13, *see also* Doc. 20 at 1-4).

## II. DISCUSSION

### A. Standard of Review

Pursuant to the Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), this Court's review of a final decision of the Commissioner is limited to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, if this Court finds that the Commissioner applied the correct legal standards and that her decision is supported by substantial evidence, the Commissioner's determination may not be overturned.

While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a scintilla and it must do more than create a suspicion of the existence of a fact to be established." *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (brackets and internal quotation marks omitted). Critically, "[t]he substantial evidence standard 'presupposes a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v.*

*Colvin*, 607 F. App'x 264, 266 (4th Cir. 2015) (ellipsis omitted) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988).

"In reviewing for substantial evidence, a court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record. *See Hays*, 907 F.2d at 1456. Therefore, the issue before this Court is not whether Plaintiff *is* disabled, but whether ALJ Jordan's conclusion that Plaintiff is *not* disabled is explained and *supported by substantial evidence* and that such decision was reached based upon a correct application of the relevant law.

B.    <u>Non-Exertional Impairments</u>

At Step Two, an administrative law judge "determines whether the claimant has a medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). "A claimant has a severe impairment if an impairment or combination of impairments significantly limits his physical or mental ability to perform basic work activities." *Monroe v. Colvin*, 826 F.3d 176, 184 n.8 (4th Cir. 2016) (citing 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a)). "When evaluating and documenting the severity of a claimant's mental impairment at step[] 2 . . . the [administrative law judge] *must* follow the special technique," known as the psychiatric review technique, provided for in 20 C.F.R. § 404.1520a(a).[5]

---

[5] An amended version of 20 C.F.R. § 404.1520a took effect in 2017. For purposes of this decision, this Court applies the version of 20 C.F.R. § 404.1520a that was in effect at the time of ALJ Jordan's decision. *See Brown v. Berryhill*, 2017 WL 3574449, at *1 n.1 (E.D.N.C. July 21, 2017); *Fair v. Berryhill*, 2017 WL 744063, at *2 n.2 (D.S.C. Feb. 27,

*Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). Under the psychiatric review technique, an administrative law judge must "document 'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in § 404.1520a(c)(3)"—(1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace, and (4) episodes of decompensation. *Id.* (quoting 20 C.F.R. § 404.1520a(e)(4)). The first three areas are rated on a "five-point scale: None, mild, moderate, marked, and extreme" while the fourth area is rated on a "four-point scale: None, one or two, three, four or more." *Id.* (internal quotation marks omitted). "Listing 12.04 provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms, and (B) the symptoms result in at least two of the following '1. Marked restrictions of activities of daily living; 2. Marked difficulties in maintaining social functioning; 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration,' or (C) there is a medically documented history of chronic affective disorder of 'at least 2 years' duration' that has caused more than a minimal limitation of ability to do basic work activities that also satisfy specific additional criteria." *Cureton v. Astrue*, 2011 WL 903032, at *11 (D.S.C. Jan. 28, 2011) (citing 20 C.F.R. Pt 404, Subpt. P, App. 1 § 12.04); *see also Housby v. Colvin*, 2015 WL 1021358, at *7 (S.D.W. Va. Feb. 4, 2015).

The record demonstrates that ALJ Jordan adequately assessed Plaintiff's adjustment disorder with symptoms of depression and anxiety and that substantial evidence supports ALJ Jordan's conclusion that Plaintiff's adjustment disorder with symptoms of depression and anxiety did not qualify as a severe impairment. Specifically, ALJ Jordan noted that Plaintiff reported improvement as to his depression and anxiety after being placed on medication by his primary care

---

2017) (citing 81 Fed. Reg. 66138-01 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.")).

providers, that Plaintiff did not seek treatment from a mental health specialist, and that his post-medication mental status exams were "essentially benign." (Tr. 39 (citing Tr. 443-554, 674-780)); *see Bailes v. Berryhill*, 2017 WL 2569741, at *8 (W.D.N.C. June 12, 2017) (Voorhees, J.) (concluding that administrative law judge supported conclusion that anxiety and depression did not qualify as severe impairments where symptoms were controlled by medication and claimant did not seek treatment from a mental health specialist (citing *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling))).

The mental status exam notes relied on by ALJ Jordan provide substantial evidence for ALJ Jordan's temporary conclusion that Plaintiff's adjustment disorder with symptoms of depression and anxiety did not constitute a severe impairment. The notes from Plaintiff's eight primary care visits from October 2010 through July 2011 all show that Plaintiff did not exhibit signs of depression, anxiety or agitation. (Tr. 445, 453, 458, 464, 469, 473, 485, 493). Starting in August of 2011, Plaintiff was noted as having a flatter affect, which persisted through February 2012. (*See* Tr. 503, 508, 517, 523, 530, 541, 547). During his seven primary care visits between August 2011 and February 2012, Plaintiff twice reported that he felt depressed; but even when reporting that he was depressed, Plaintiff denied hopelessness, anhedonia,[6] or a loss of interest in life. (Tr. 501, 539). In March 2012, after learning that his father had colon cancer, Plaintiff reported a loss of interest in doing things, anxiety, and depression, (Tr. 550, 552), and was placed on Celexa, (Tr. 553). By November 2012 Plaintiff resumed denying experiencing depression and anxiety and by December 2012 Plaintiff's affect returned to normal. (Tr. 771, 765-66). Finally, during his thirteen visits from February 2013 through June 2014, Plaintiff only reported feeling

---

[6] Anhedonia is defined as "[t]he absence of pleasure from the performance of acts that would ordinarily be pleasurable." Stedman's Medical Dictionary, 93 (28th Ed. 2006).

depressed twice. (Tr. 720-21, *see* Tr. 733-34). In sum, the primary care visit notes provide substantial evidence for ALJ Jordan's temporary conclusion that Plaintiff's depression responded to medication and did not "significantly limit his physical or mental ability to perform basic work functions."

Turning to the psychiatric review technique, ALJ Jordan appropriately relied on the function reports Plaintiff completed. (Tr. 39-40 (citing Tr. 241-48, 259-65)). As noted by ALJ Jordan, the function reports, as well as Plaintiff's hearing testimony, demonstrated that Plaintiff frequently visited his uncle's pawn shop to socialize with individuals and that he does not have any issues getting along with people. (Tr. 39, *see also* Tr. 245-46, 262-63). Accordingly, substantial evidence supports ALJ Jordan's conclusion that Plaintiff did not suffer from limitations, no less marked limitations, as to social functioning. Turning to concentration, persistence, or pace, as noted by ALJ Jordan, Plaintiff's function reports show that Plaintiff did not identify concentration as an area impacted by his alleged disability. (*See* Tr. 246, 263). Also as noted by ALJ Jordan, Plaintiff's function reports show that Plaintiff could follow instructions, could finish tasks that he starts, could handle stress, and had "no problems with attention." (Tr. 246-47, 263-64). Accordingly, substantial evidence supports ALJ Jordan's conclusion that Plaintiff did not suffer from limitations, no less marked limitations, as to concentration, persistence, or pace. Finally, there is no suggestion by Plaintiff that he suffered any episodes of decompensation. Thus, because substantial evidence supports ALJ Jordan's conclusion that the psychiatric review technique did not result in two or more functions with marked limitations or one function with a marked limitation and repeated episodes of decompensation, ALJ Jordan did not commit reversible error when concluding that the psychiatric review technique resulted in a

finding that Plaintiff's adjustment disorder with symptoms of depression and anxiety did not qualify as a severe impairment.[7]

In an attempt to overcome ALJ Jordan's conclusion, Plaintiff relies on a psychological assessment performed by Deborah Barnett, Ph. D. (Doc. 26 at 9-13, *see also* Tr. 7-22). Barnett performed the psychological assessment on January 22, 2015. (Tr. 7). Barnett's assessment discusses Plaintiff's medical history and his self-reports. (Tr. 7-9). Barnett's assessment also discusses several mental health tests she performed. (Tr. 9). In Barnett's opinion, Plaintiff suffers from major depressive disorder with anxious distress and "appears to have moderate to marked impairment in social functioning and activities of daily living, including significant declines in concentration, persistence, and pace" such that it is unlikely Plaintiff could meet the typical demands of employment. (Tr. 9-10). Although Barnett's assessment of Plaintiff constitutes some evidence of Plaintiff's mental state on and around January 22, 2015, Barnett's report does not include any opinions about Plaintiff's mental state between his alleged disability onset date and the date of ALJ Jordan's decision. (*See* Tr. 7-10). Indicative of this conclusion, the WHODAS 2.0 assessment Barnett used in reaching her opinions focused on Plaintiff's state of mind during the thirty days preceding the January 22, 2015 assessment. (*See* Tr. 9). Accordingly, the Appeals Council correctly concluded that Barnett's opinion dealt with a time period after that at issue in ALJ Jordan's decision, and properly advised Plaintiff that Barnett's assessment could be considered as part of a new claim for disability benefits that encompassed the date of Barnett's exam and findings.[8] (*See* Tr. 2).

---

[7] In light of this Court's finding that substantial evidence supports ALJ Jordan's conclusions as to social functioning, concentration persistence, or pace, and episodes of decompensation, this Court need not determine whether the evidence relied on by ALJ Jordan constituted substantial evidence with respect to her finding that Plaintiff experienced only mild limitations, as opposed to moderate limitations, as to daily activities.

[8] To the extent that Plaintiff argues that Social Security Administration or ALJ Jordan should have requested a psychological assessment prior to issuing decisions rejecting Plaintiff's disability claim, it is not apparent that (1) the

C.  Function-By-Function Analysis

Plaintiff argues that ALJ Jordan failed to perform a function-by-function analysis when forming Plaintiff's residual functional capacity for purposes of Step Four and Five of the disability analysis. (Doc. 26 at 13-18). Before determining at Step Four whether a claimant can perform his past relevant work, the administrative law judge must conduct a residual functional capacity assessment. *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015). Residual functional capacity is defined as "'an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.'" *Id.* at 639 (quoting SSR 96-8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996)) (emphasis omitted). In assessing a claimant's residual functional capacity, the administrative law judge "'must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Id.* at 636 (quoting SSR 96-8p, 61 Fed. Reg. at 34,475 (July 2, 1996)). Furthermore, an administrative law judge's "residual functional capacity 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Id.* (quoting SSR 96-8p, 61 Fed. Reg. at 34,478). An administrative law judge, however, does not commit reversible error requiring remand by failing to discuss functions that are "'irrelevant or uncontested.'" *Id*. (quoting *Cichocki v, Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

Plaintiff's brief fails to identify explicitly which function ALJ Jordan failed to consider and what, if any, evidence in the record before ALJ Jordan placed the function at issue. (*See* Doc. 26

---

records before ALJ Jordan, including Plaintiff's self-reports, warranted a psychological assessment or (2) Plaintiff's counsel, at the hearing before ALJ Jordan, raised this issue.

at 13-18). Regarding Plaintiff's physical limitations, ALJ Jordan's decision demonstrates that she thoroughly reviewed each of Plaintiff's physical impairments. (*Compare* Tr. 40, *with* Tr. 246, 263; *see also* Tr. 42-44, 222-45, 247-62, 264-77). It further appears ALJ Jordan discussed all of the functions identified in the state agency disability analysis and in the functional reports completed by Plaintiff. (*See* Tr. 222-77). Accordingly, in the absence of Plaintiff specifically identifying what physical function ALJ Jordan failed to discuss, the Court rejects Plaintiff's argument that remand is required to further address Plaintiff's physical functional limitations.

As for mental functions, Plaintiff suggests that ALJ Jordan did not properly account for Plaintiff's limitations with respect to concentration, persistence, or pace. (Doc. 26 at 17-18). Having already concluded that substantial evidence supports ALJ Jordan's conclusion that Plaintiff was not limited with respect to concentration, persistence, or pace, it follows that ALJ Jordan did not need to discuss any residual functional capacity limitations accounting for issues with concentration, persistence, or pace. Additionally, other than Barnett's psychological assessment, which this Court has already concluded addressed Plaintiff's mental state subsequent to ALJ Jordan's decision, Plaintiff fails to identify anything in the record putting concentration, persistence, or pace, or any other mental function, at issue. Therefore, remand is not warranted for a more in depth function-by-function analysis of Plaintiff's mental functioning between the alleged disability onset date and the date of ALJ Jordan's decision.

### III. DECRETAL

**IT IS, THEREFORE, ORDERED THAT**:

(1) Plaintiff's Motion for Summary Judgment (Doc. 14) is **DENIED**;

(2) Defendant's Motion for Summary Judgment (Doc. 18) is **GRANTED**; and

(3) The decision of the Commissioner is **AFFIRMED**.

Signed: August 28, 2017

Richard L. Voorhees
United States District Judge